2138. WEBB *v.* THE STATE.

1. Where the competency of a child who is offered as a witness is questioned on the ground that the proposed witness is too young to understand the nature and sanctity of an oath, the better practice is for the court to make, or cause to be made, a preliminary examination of the child, for the purpose of testing the child's competency; but the failure of the court to do so will not be reversible error, where it appears that the witness was fully examined on this point in the presence of the jury during examination on the main issue. In this case the court did not commit manifest error in holding the child competent and in submitting her evidence to the jury.

2. On a trial for the crime of assault with intent to rape, the alleged victim being a girl eight years old, the mother of the girl was allowed to testify, over objection, that another daughter, several years older, had complained to her husband and herself that the defendant had on a previous occasion "ravished her while she was with him in a buggy on the way home from church." *Held,* error demanding another trial.

Indictment for assault with intent to rape; from Tift superior court—Judge Mitchell. September 2, 1909.

Argued October 6,—Decided November 9, 1909.

*C. C. Hall, J. S. Ridgdill, Hendricks & Christian,* for plaintiff in error. *W. E. Thomas, solicitor-general,* contra.

HILL, C. J. The plaintiff in error was indicted for the crime of assault with intent to rape, and was convicted. He complains of the judgment overruling his motion for a new trial. The original motion for a new trial contained the usual general grounds, and the amended motion consists of twenty-seven special assignments of error. Many of the grounds set out in the motion for new trial are entirely without merit. Some contain immaterial errors which, on another trial, will probably not be repeated. We will consider only those grounds which we deem material and of sufficient importance to decide.

1. The criminal assault was alleged to have been made on the

person of a little girl, eight years old, who was ten years of age when sworn on the trial as a witness for the State. Before she was examined, counsel for the defendant requested the court to make a preliminary examination for the purpose of testing her competency as a witness. The court did not make any preliminary examination on this point, but permitted the State to examine the witness, in chief, on the main issue in the case; and the examination on the competency of the child as a witness was first made on cross-examination. The questions propounded by the learned counsel to the child in order to determine whether she understood the nature of an oath were somewhat beyond her mental capacity, and correct answers to some of these questions would tax the intellectual capacity of a much older person. The result of this examination was apparently unsatisfactory to the solicitor-general. At the recess of court the child appeared to have been refreshed as to her catechism, and was reintroduced and again examined as to her competency as a witness. The questions then propounded to her were appropriate for the purpose, and were framed with the requisite simplicity for comprehension by a child of her age. Her answers to these questions satisfied the presiding judge that she was sufficiently competent as a witness to allow her testimony to go to the jury, to be weighed by them and given such credit as they might think it entitled to receive under all the circumstances. We think that the court should have had a preliminary examination made of the child to test her competency, before she was allowed to testify as a witness. Section 5273 of the Civil Code declares that a child who does not understand the nature of an oath is an incompetent witness; and section 5276 makes it the duty of the court, by an examination, to determine as to the competency of one offered as a witness, when alleged to be incompetent by reason of childhood. But while the court in our opinion should have made a preliminary examination on the question of competency, yet a failure to do so is not a reversible error, where an examination on the question of competency was in fact made by the attorneys of both sides in the presence of the court and jury, and the court was satisfied from such examination that a prima facie case of competency was shown. The error must be very flagrant to authorize this court to reverse the judgment of a trial court on this question. The trial judge had the child before him and had the

benefit of the manner in which she answered the questions propounded to her, and he was, therefore, in a much better position to form a correct opinion on the subject than this court, which simply has before it the written answers of the child. At last the jury, who saw the child and heard her answers to the questions relating to her competency, were the judges of whether her testimony was entitled to credit. *Young* v. *State*, 122 *Ga.* 726, 125 *Ga.* 584 (50 S. E. 996, 54 S. E. 82) ; *Peterson* v. *State*, 47 *Ga.* 525 (2).

2. The mother of the child who was the victim of the alleged assault was allowed to testify, over the objection of the defendant that another daughter, fourteen years of age, had told her and her husband that the defendant, while she was riding in a buggy with him on her way home from church, had ravished her. We think the court committed very serious and prejudicial error in admitting this testimony. It was objectionable for several reasons. It was hearsay. It was a mere conclusion of the daughter who had told of the occurrence. It was charging defendant with a separate and distinct crime. Even if he had been on trial for a criminal assault on the girl who gave this information to her parents, the testimony would not have been admissible against him, for it is well settled in such cases that only the fact of the complaint is admissible, and not any of the details of the criminal transaction. The learned solicitor-general insists that the evidence was admissible to rebut the statement of the defendant to the jury that the girl who had made the statement to her mother was pure and innocent, and that the prosecutor was actuated by malice against him. We think that the testimony was not admissible for this purpose, or for any other purpose, and that its admission was so hurtful as to demand another trial. It was calculated to inflame the passions of the jury and to excite their prejudice.

We do not deem it necessary to go into the details of the revolting evidence in this case, but we feel constrained to say, after a careful examination of the record, that we do not feel satisfied with the correctness of the verdict, and, if we had jurisdiction to do so, would grant the defendant another trial on the ground that we entertain very serious doubt of his guilt. But, as we have repeatedly ruled, we have no power, under the constitutional amendment creating this court, to grant a new trial, except for errors of law. Wherever there is any evidence to support the verdict, how-

ever weak that evidence may appear to us, the voice of the jury as to the truth in the facts must be accepted by us as vox Dei.

In this case there was one witness as to the corpus delicti. This was the little victim of the alleged assault. If the jury believed her, her testimony was sufficient, under the law, to support a verdict of guilty. Ordinarily, the unprompted and spontaneous testimony of a child is entitled to great weight; and if, in this case, the little girl had made complaint to her mother or to some one else immediately after the alleged offense was committed, her testimony would need no other corroboration to convince the mind of its truth. But when, as in this case, she did not make complaint either to her mother or to any one else until several weeks after the offense was alleged to have been committed, and then told her of the defendant's repeated assaults upon her, it was done under circumstances which greatly impaired its probative value as corroboration. She also stated in her testimony that she was "just telling what her mamma told her to tell," and that her mother had frequently rehearsed with her the subject-matter of her testimony. A suspicion naturally arises that the narrative which she gave of the facts was not entirely spontaneous and of her own initiative. The story which the little girl tells in her evidence is also unreasonable in several respects. She testified that the defendant had on one occasion assaulted her in his own house, where she was nursing his baby, and while his wife was in the next room, and that she made no outcry; that on another occasion he assaulted her in her father's crib, near the house, and she made no outcry, and that on the last occasion the criminal act took place in her own home in the absence of her father and mother, and while the other children were playing in the yard. She further states that on two of these occasions the defendant, without difficulty, fully accomplished his purpose, and had sexual intercourse with her. During all of this time she made no complaint to any one, and no physical evidence of such assaults was discovered upon her person. It is true she states that the defendant threatened to whip her if she told her mother, but it is incredible that the child would have kept silent under the circumstances, or that her mother or sister would not have discovered some physical signs upon her person, caused by the commission of these terrible crimes.

There are some other facts which tend to establish the improba-

bility of the truth of the accusation. The little girl was the niece of the defendant's wife. She was frequently an inmate of his own house and a companion and playmate of his own little children, and he was frequently a visitor to the home of his sister-in-law. He seems to have been a devoted husband and father, and an active and official member for many years of his church,—a man presumably of good character, against whom no charge had ever been made by any one except by his brother-in-law, the prosecutor in this case, who, on two previous occasions, according to the evidence, had, without the slightest foundation, taken out a warrant against him for bastardy, in connection with his oldest daughter, and had charged him with being criminally intimate with his wife. Two previous groundless charges of the same general character made by the prosecutor against the defendant furnish some reason for a suspicion at least that the present prosecution might come from the same source and be inspired by the same feeling of anger and jealousy. The great blind poet of England has declared that hypocrisy is a sin that walks unseen except to God alone, but it is inconceivable that a man who had lived a life of rectitude beyond middle age, a devoted husband and father, should be capable of committing a crime so heinous and a sin so foul as to repeatedly outrage the person of a little girl who, in his statement to the jury, he says was "as sweet and smart a little girl as I ever saw, as kind as anybody's little girl." There are some crimes which stagger even the credulity of those who believe in the doctrine of total depravity. The charge against the defendant is of that class of crimes, and should be proved by the clearest and most convincing evidence. *Judgment reversed.*