24025. RHODDENBERRY *v.* THE STATE.

DECIDED JANUARY 12, 1935.

*Lee S. Purdom, Calvin D. Waddell,* for plaintiff in error.

MacIntyre, J. Mrs. M. B. Rhoddenberry was convicted of having, controlling, and possessing intoxicating liquors. She moved for a new trial, the motion was overruled, and she excepted.

The only witness for the State was a deputy sheriff, who testified in effect that he made a search of the café which the defendant was "running" and found about a pint or just a little more of whisky in the café. "Mrs. Rhoddenberry was in the café where the whisky was found, and when I went in the front door I met her coming out of the door leading from the kitchen to the front part of the café. . . I found the whisky in the back on a table or shelf in a coffee pot. There were several people back there around the table or shelf on which the whisky was. I don't remember who they were or what they were doing. . . I don't remember what was said by any of those there at that time. It was just a little after dark—about six o'clock.

Lonnie Smith, who was sworn as witness for the defendant, testified in part: "I was present at the café which she runs in Blackshear on the night the raid was made by J. S. Steedley, which was on or about the thirtieth day of December 1933. There were a number of people, about six or eight, in the back of the café where

there was a table. I went back where they were, and some were being served on the table, and were eating there. It is customary for the patrons to go back there to eat where they can warm by the stove. I had already had supper and just stopped there to chat with the people there and warm by the stove. After I had been there a few minutes, about ten minutes, there came in the café some two or three people, I don't remember just how many or who they were, but I know they came back where we were sitting around the stove talking, and one of the people who just came in pulled out a glass jar from his pocket or from under his coat and set it on the table and asked us all to have a drink on him. The jar had something over a pint of whisky in it. I do not remember, or did not notice, who this person was, for I did not pay much attention to it at that time. I took the quart jar and poured the whisky out of it into a coffee pot, and set the pot on the table and poured out a drink in a glass. Mrs. Rhoddenberry did not know that the whisky was there, did not see the person when he pulled the jar out, and did not see or know anything about me pouring the liquor in her coffee pot, for she was in the front of the café, and did not come about the crowd around the stove, who was eating there while the liquor was being poured out. I know that it was not her liquor and am sure that she did not know anything about it being there. . . I do not remember who the people were that came in and brought the whisky, but I think one was Colquitt Dixon, but I am not sure."

Colquitt Dixon, sworn as a witness for the defendant, testified in part: "Mrs. Rhoddenberry did not know anything about the whisky being there at all. She was not back there when the liquor was found. I know whose liquor it was, and it was not Mrs. Rhoddenberry's, and she did not have anything to do with it, and she did not know anything about it at all. [Here the solicitor asked: "Whose liquor was it?" and the witness refused to answer, upon the ground that it would tend to incriminate him.] Mrs. Rhoddenberry was not around the table where the liquor was found, the deputy sheriff met her at the door." (Here the solicitor asked the question, "Who brought the liquor in the café?" and the witness refused to answer, on the ground that it would tend to incriminate him.)

Mrs. Rhoddenberry, in her statement at the trial, denied guilt

and said that she did not know anything about the liquor at all; that it was not hers; that she had never seen it and did not know that it was in her place of business; that she did not go anywhere around the table where the other parties were before the raid was made. She was busy waiting on the trade and preparing some oyster-stew at the cook-stove.

In order to convict in this case it must be shown that the accused knowingly had, possessed, or controlled intoxicating liquor. She must have done something she ought not to have done or omitted to do something she ought to have done with reference to the whisky, and while it is not necessary, in order to constitute the offense of unlawful possession, that the defendant should have legal control or that it should have been her property, it is essential that she should have the power to control it, and if the whisky was placed in defendant's restaurant and she knew it, she acquiesces in the possession and is criminally liable therefor. "Knowledge on the part of the accused is, however, an indispensable element of a provable case. That it may be drawn from circumstances that reasonably induce a belief in its existence is indisputable. . . It is equally true that it can not be inferred from suspicious circumstances alone." Everman v. Commonwealth, 198 Ky. 5 (248 S. W., 485). The defendant was engaged in the restaurant business. Her restaurant was in a measure a place of public entertainment, and, while we do not hold that it was necessary for the State to prove that the defendant actually saw the whisky, we do think that it was necessary to show facts and circumstances from which it could be reasonably inferred that she knowingly had, possessed, or controlled the whisky. We do not think the evidence meets this requirement; and accordingly it was error to overrule the motion for a new trial. *Smith* v. *State,* 5 *Ga. App.* 834 (63 S. E. 928); *Sewell* v. *State,* 11 *Ga. App.* 754 (75 S. E. 1135); *Parker* v. *State,* 24 *Ga. App.* 158 (100 S. E. 38); *Troup* v. *State,* 30 *Ga. App.* 346 (3) (117 S. E. 410). This case differs from those cases in which whisky is found in the home which is occupied only by the defendant and his family, for no one has the right to go there without their permission. On the other hand a restaurant is a place where whosoever wishes may visit.

*Judgment reversed. Broyles, C. J. and Guerry, J., concur.*