## 26559. SCOTT *v.* THE STATE.

DECIDED MARCH 12, 1938.

*Vance Custer,* for plaintiff in error.

MacIntyre, J. The defendant Frank Scott was charged with having, controlling, and possessing intoxicating liquor. He was convicted; his motion for a new trial was overruled and he excepted.

Joe Smith, an officer and a witness for the State, testified: "I got a search warrant and asked the sheriff to go to Frank Scott's house with me. We drove up in front of Frank Scott's house and I got out of the automobile and started to the house. His wife

started closing the door. I pushed it open and when I got to the bathroom Mrs. Frank Scott was flushing the toilet and pouring the whisky in it. I saved some of it in the pitcher. Whisky was in the pitcher and she was pouring it out. I saw it being poured out. It was a pretty good size stream. It held a quart or better. The whisky was on a table. It was in the bathroom on a table. She grabbed it and spilled it on the floor." W. J. Catledge, another officer of the State, testified: "On the 27th day of June I went to Frank Scott's home. I had a search warrant. I made a search of his place. It was in Decatur County. His wife was there. I found a pitcher, two bottles, and these glasses on the table. I found them in the bathroom. Whisky came out when I tried to get the glasses out. Frank Scott was on the porch. His wife was locking the door and Smith and I knocked it open. It was at Frank Scott's home that I found the whisky. A very strong scent of whisky was in the room. I do not know of anything that Frank Scott does for a living except selling whisky." The defendant in his statement admitted that the place where the whisky was found was his home, and that he was on the porch thereof at the time of the finding of the same.

■ The defendant contends that the judge should have charged the law of circumstantial evidence without request for the reason that the State was depending entirely upon such evidence for conviction. "Circumstantial evidence is more clearly defined from its results than by a definition of the phrase itself. It is that evidence that tends to prove the facts in issue by proving other facts or circumstances that, according to the common experience of mankind, usually attend the facts in issue, affording a basis for a reasonable inference by the court or the jury that the facts in issue actually occurred." 2 Wharton's Criminal Evidence (10th ed.), 1632, § 871. "Circumstances are but minor facts, although the words, facts, and circumstances are used interchangeably in the phrase, 'circumstantial evidence.' When we speak of a circumstance, we have in mind a minor fact that relates to or is connected with the main fact. When these minor facts point unerringly to a conclusion, then they are said to be certain." 2 Wharton's Criminal Evidence (10th ed.), 1635, § 874.

Direct evidence is that which immediately proves the ultimate fact, that is, the very fact at issue. Indirect or circumstantial

evidence is that which establishes, not the ultimate fact, but evidentiafy facts, that is facts from which an inference may be drawn of the existence of the ultimate or main facts. To illustrate a case depending entirely upon circumstantial evidence, if in a case of simple larceny the testimony showed only that the witness saw the recently stolen goods in the possession of the defendant, this is direct evidence that the defendant was in the possession thereof, but, possession in this kind of a case is not the ultimate and main fact in issue. In other words, this is direct evidence of an evidentiary fact (the possession), that is, it is direct evidence of a fact from which an inference may be drawn of the existence of the main or ultimate fact, to wit, the theft of the goods by the defendant. And, where only the possession is shown in such a case, the law of circumstantial evidence should be charged even without request, for there is no direct evidence of the main fact, the stealing of the goods. In the instant case, the main or ultimate fact is the possession of the intoxicating liquors, and when it is shown that the witness or witnesses saw the whisky in the home of the defendant, this is direct testimony of the ultimate or main fact in issue, to wit, possession or control of the intoxicating liquors, and the law presumes that the house, the intoxicating liquors, and all the other household effects found in the home of the defendant, belong to him as head of the family. Direct evidence of participation in the possession or control of intoxicating liquors is not mere circumstantial evidence of guilt. *Morris* v. *State,* 51 *Ga. App.* 145 (179 S. E. 822) ; *Strickland* v. *State,* 167 *Ga.* 452 (145 S. E. 879). "Matter, logically evidential, has become the subject of a rule which directly, although only prima facie, annexes to it legal consequences belonging to the facts of which it is evidence; and this rule takes its place in the substantive law as a subsidiary proposition, alongside of the main and fundamental one, as an aid in the application of it. The law, as I have said, is always growing in this way, through judicial determinations; for the application of the ultimate rule of the substantive law has to be made by reasoning; and this process is forever discovering the identity, for legal and practical purposes, of one state of things with some other. Many facts and groups of facts often recur, and when a body of men with a continuous tradition has carried on for some length of time this process of reasoning upon facts that often repeat them-

selves, they cut short the process and lay down a rule. To such facts they affix, by a general declaration, the character and operation which common experience has assigned to them. Relating, as these declarations do, to specified facts, and groups of facts, and certain aspects and consequences of them, they belong to that part of the substantive law which deals with these particular things; and as has been truly remarked, they can be understood only in connection with these branches of the law. They do not belong to the law of evidence. When it is said that if persons contract for the sale of a specific chattel, it is presumed that the title passes; and that when a man voluntarily kills another, without any more known or stated, it is presumed to be murder; and that when a written communication to another is put in the mail, properly addressed, and postage prepaid, it is presumed that the other receives it; and that when one has been absent seven years and no knowledge of him had by those who would naturally know, death is presumed." Thayer on Common-Law Evidence, 326. And we might add that where whisky is found in the home of the defendant, it is presumed that it is his whisky and that he knowingly possessed the same.

In these cases, rightly considered, we have particular precepts in the substantive law of many different subjects. The essential nature of these presumptions is not at all affected by the fact that these judicial conclusions are only presumptive, and are left open to controversy. "Presumptions of law are divided into conclusive presumptions and disputable [rebuttable] presumptions." Black's Law Dictionary, 3d ed. In this way the rule of presumption does not belong to the law of evidence but, takes its place as a subsidiary proposition alongside the main and fundamental fact, and is a rule of substantive law. This rule fixes, for the purpose of a particular inquiry, the effect of specified facts. Whisky in the home of the defendant is to be accounted, as regard to the inquiry, the same thing as knowing possession. It is its legal equivalent. Thayer on Common-Law Evidence, 1st. ed. 321. To prescribe and fix certain legal equivalence of the facts, is a very different thing from merely allowing that meaning to be given to them. The latter rule says that the question is left to the jury to say whether or not the fact that the whisky, which was found in the home of the defendant, was a permissable and usual inference that the whisky

belonged to the defendant. This is the rule of circumstantial evidence and is not applicable to the facts in the instant case. The former rule (the one with reference to the legal equivalence) that the legal effect of the facts proved, that is, the finding of the whisky in the home of the defendant, is that the possession shall always, in the absence of other circumstances, be imputed to him, and when these facts are proved, it is not a case where the fact of guilt depends entirely on circumstantial evidence, for, nothing else appearing, the jury ought to (not may) impute knowing possession to the defendant. In other words, if the jury believe the evidence that the whisky was found by the officers in the home of the defendant, nothing else appearing, and (the jury) apply the proper rule of law, they could but find that the whisky found in the defendant's home belonged to him. This is but the application of the rule of direct evidence, and this is the rule applicable in the instant case. The summation of it all seems to us to be that when the officer testified that he saw and found the whisky in the home of the defendant, this was testimony which was the legal equivalent of testimony that he saw and found the whisky in the possession of the defendant. *Morris* v. *State,* 51 *Ga. App.* 145 (179 S. E. 822). And because the officers testified that the whisky was located in a certain particular place in the home, or was being destroyed by the wife of the defendant in his home upon the approach of the officers, is a matter of defense that might be considered by the jury in determining whether the defendant knew the whisky was in his home. If he knew it, he acquiesced in the "possession and control" and was criminally liable. *Rhoddenberry* v. *State,* 50 *Ga. App.* 378, 380 (178 S. E. 170); *Hill* v. *State,* 50 *Ga. App.* 288 (178 S. E. 206).

■ A witness for the State testified at length to facts material to the State's case. In the course of his testimony he stated that he had purchased whisky from the defendant's wife in his (defendant's) house, and further testified "I have been in the asylum. I suffer from fits. There is a great many times that I do not know what I am doing." Counsel for the defendant thereupon moved the court to exclude all of the testimony of this witness on the ground that it conclusively appeared that the witness was incompetent. The court thereupon ruled in the presence of the jury: "We will let the jury decide that." We quote from the motion for

new trial: "Movant insists that the competency of the witness was for the court and not for the jury to pass upon, that the court erred in submitting the question of the competency of said witness for determination by the jury, and that the court should have excluded said testimony upon the showing made by the witness himself that he had been in the asylum, that he was subject to fits, that his mind is not clear after such a fit, that he suffers from dreams, that he sees things that do not look right and it is hard for him to tell what is actually right, that in one of these dreams he saw defendant's wife pouring out whisky." The state of the mind of the witness at the time of the occurrence testified about would go to his credit, which is always a question for the jury. The state of his mind at the time of testifying on the trial would go to his competency as a witness, and while as a general rule the competency of a witness is a question for the court and not for the jury (*Hicks v. State,* 105 *Ga.* 627, 31 S. E. 579), yet where the evidence did not demand a finding that at such time he was insane and therefore incompetent as a matter of law, but this question rested on issues of fact, the trial judge would not commit error, and certainly not reversible error, in leaving the determination of such issue to the jury. *Dowdy* v. *Watson,* 115 *Ga.* 42 (41 S. E. 266) ; *Goodson* v. *State,* 162 *Ga.* 178 (3) (132 S. E. 899) ; *Conway* v. *State,* 171 *Ga.* 782 (3) (156 S. E. 664). The evidence in the present case did not demand a finding that the witness was incompetent as a matter of law. True, he testified that he had been in the asylum and was subject to fits, but the fact that a witness has theretofore been adjudged insane, does not make him incompetent as a matter of law. *Cuesta* v. *Goldsmith,* 1 *Ga. App.* 48 (57 S. E. 983). In a case of this character, the witness's appearance, his demeanor, his manner of testifying, and the nature and character of his testimony, are to be considered as evidence touching upon the question of his sanity. The ruling of the trial judge in the present case, in response to the motion of counsel, was in effect a holding that the witness was not incompetent as a matter of law, and from what has been said above we do not think he erred in so holding. It follows that if the statement of the trial judge "We will let the jury decide that," is to be construed as leaving to the jury the question of his competency (see *Bell* v. *State,* 164 *Ga.* 292, 138 S. E. 238), such a ruling "would have been more favorable to the de-

fendant than he was entitled to, and it furnishes no ground for the grant of a new trial." *Bell* v. *State,* supra. The assignment of error is therefore without merit.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*