35106. GREESON v. THE STATE.

DECIDED APRIL 13, 1954.

M. L. Harris, McClure & McClure, for plaintiff in error.

Earl B. Self, Solicitor-General, contra.

TOWNSEND, J. The evidence in this case demands a finding that C. B. Cline and Edward McNeese broke into a store belonging to S. E. Brown in Catoosa County, and stole several hundred dollars worth of merchandise therefrom, and that the defendant was in the company of these persons from about 11 p.m. on the night in question until after 2 a.m., and that during this time the store was burglarized and a part of the loot hidden in a stretch of woods. The sole question presented is whether, during that period of time, the defendant was capable of forming any intent whatever, since the evidence also demands a finding that there was no intent or conspiracy to do any felonious act prior to 11 p. m. Burglary is defined in Code § 26-2401 as "the breaking and entering into the dwelling, mansion, or storehouse or other place of business of another, where valuable goods, wares, produce, or any other article of value are contained or stored, with intent to commit a felony or larceny." There are no material conflicts as to the facts of this case, and the evidence bearing upon the defendant's physical condition is substantially as follows: He drove his automobile to the Brass Rail during the afternoon of December 9, 1951, and remained there until closing time. He went out once to buy whisky. According to his statement, he and another man drank a fifth and a pint of whisky and a pint of wine, together with some beer. There was testimony that he drank from 12 to 18 cans of beer

and a large quantity of whisky. At about 11 p. m. he "had passed out—just plumb drunk." An employee of the establishment asked C. B. Cline to take him home, and two of them loaded him into the car, as he was unable to stand. As Cline, McNeese, the defendant, and three other persons were riding along, the question arose as to what places had been broken into lately, but there is no evidence that the defendant took any part in the discussion or even heard it. Three persons were left at an eating place. Cline then drove the car to Brown's store, where he and McNeese got out, McNeese broke the window, and they entered and took some flashlights. They did not remember the defendant getting out of the car. They returned to the eating place, Cline doing all the driving, found the other persons had gone, bought some flashlight batteries, returned to the store, and loaded merchandise from it into the automobile. Cline and McNeese had agreed on this after the other persons left the car, but apparently had very little conversation about the matter, and Cline picked the store more or less at random as they drove by. Cline and McNeese went back into the store to load the goods; they "thought" the defendant came into the store while they were loading; they did not remember his doing any act toward taking any merchandise or helping load the car. They then drove to a patch of woods where Cline and McNeese unloaded and hid a part of the loot; they did not remember the defendant rousing or getting out of the car at that point. Cline left McNeese nearby, at his mother's house, and then set out to take the defendant home. He drove a considerable distance out of his way to ask a witness, Milford, where the defendant lived; Milford saw the defendant slumped in the back seat and spoke to him, but received no answer; in the witness's opinion the defendant was either drunk or asleep; he fixed the time of that encounter as between 1 and 2 a. m. Cline then drove the defendant home, and he walked into the house unassisted, but fell over on the bed with his clothes on; his brother removed his shoes and coat. He was unconscious and in the same position when that brother left the house at 8 a. m., and also at noon when another brother came by. The latter had seen the defendant's automobile at the Brass Rail, and asked the defendant where his car was; the latter answered he supposed it was

out in the yard. A few days later he was questioned by police officers as to who he had come home with on the night in question, and stated he thought it was the person with whom he had been at the Brass Rail during the early afternoon. In his statement to the jury, he said that he did not remember leaving the tavern or anything that happened thereafter, except that he hit a mailbox when entering his house; that he had no recollection of having been in the company of Cline and McNeese, and did not know what, if anything, he had done during the intervening time.

Code § 26-403 provides: "Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness was occasioned by the fraud, artifice, or contrivance of another person, for the purpose of having a crime perpetrated." In *Walker v. State*, 9 *Ga. App.* 863 (2) (72 S. E. 446), it was held: "While drunkenness may be a circumstance from which the jury may infer that one who has taken and carried away another's property did not intend to steal it, still, if the intention to steal is present, drunkenness is no excuse for the crime, even though the intent to steal be caused by the drunkenness itself." Whether intent to steal is present is usually a jury question; but where, through unconsciousness or other cause, there can be no intent, this would be a defense to a criminal charge. See *Lewis v. State*, 196 *Ga.* 755 (4) (27 S. E. 2d 659). The headnote decision in *Vickers v. State*, 55 *Ga. App.* 163 (189 S. E. 377) reads as follows: "The defendant was convicted of burglary. The evidence, while disclosing that he broke into the dwelling house of the prosecutor, was insufficient to show that the breaking was done with intent to commit a felony or larceny. Under a proper indictment or accusation, the evidence would have authorized a conviction of being in an intoxicated condition within such dwelling house. The verdict was unauthorized by the evidence." Examination of the record in the *Vickers* case shows that the present case is weaker, in that in the *Vickers* case the defendant was alone and conscious at the time he broke into the prosecutor's house. It is, therefore, proper for this court to reverse a case on the general grounds where there is no evidence of intent on the part of the defendant to commit the larceny or other felony charged. Here, the testi-

60

mony of Cline and McNeese was unequivocal as to all of their conduct in connection with the burglary. However, neither testified as to any act on the part of the defendant, any conversation from which it might be inferred that he knew what was going on, or any part played by him in the criminal enterprise. He was unconscious when he left the Brass Rail at 11 p. m.; he was unconscious when seen by the witness between 1 and 2 a. m., and, while able to walk into his house, he immediately lapsed into unconsciousness or sleep and remained so until awakened at noon the following day. Although Cline and McNeese testified that they intended to divide the loot three ways, there was no evidence that the defendant entered into this agreement or that he knew of their intention. There is no evidence that the defendant even knew that a burglary took place. The circumstances strongly indicate he was unconscious of this fact at all times during the acts committed by Cline and McNeese which constituted its commission. The very equivocal evidence of Cline and McNeese, which nevertheless the jury was authorized to believe, to the effect that the defendant actually entered the burglarized premises, would not be sufficient, even if true, standing alone, to support a verdict of guilty against the defendant in the absence of some evidence that he at least knew he was there. Mere presence at the scene of the crime is not sufficient to render one an aider or abettor or to authorize his conviction. *Gentry* v. *State,* 65 *Ga. App.* 100 (15 S. E. 2d 464); *Butler* v. *State,* 11 *Ga. App.* 815 (76 S. E. 368). It is true that, where the crime is proved, testimony of one accomplice is sufficiently corroborated by testimony of another accomplice. *Williams* v. *State,* 31 *Ga. App.* 293 (1a) (120 S. E. 550). While there is direct evidence as to the presence of the defendant with the two witnesses who testified for the State and who committed the burglary, there is no direct testimony that the defendant participated in the crime, and no circumstances from which this can be inferred, to the exclusion of every reasonable hypothesis save that of the guilt of the accused. Accordingly, the evidence is insufficient to support the verdict.

The trial court erred in denying the motion for new trial.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*