43614, 43615. BROWN v. THE STATE (two cases).

ARGUED MAY 7, 1968—DECIDED NOVEMBER 8, 1968.

*Albert A. Roberts,* for appellants.

*Lewis R. Slaton, Solicitor General, Paul Ginsberg, J. Walter LeCraw,* for appellee.

BELL, Presiding Judge. ■ *Case No. 43614.* During the trial the assistant solicitor cross examined defendant Emory Brown as follows: "From 1947 through 1959, a period of twelve years, tell us whether or not you were gainfully engaged in private industry or not. The Court: Does it have some probative value in his relationship with this? . . . [Assistant Solicitor]: Yes, Sir. Mr. Roberts: I'd like to argue this out of the presence of the jury. . . The Court: I'm going to have to wait and see what his questions are. . . A. I didn't work for private industry. I worked for the Government. Q. What branch of the Government? A. Federal Prison industry. Q. For a salary? A. Yes, sir. Q. What was the salary? A. Thirty-five cents an hour. Q. Where did you live? A. In the Federal Penitentiary." At this point defendant's counsel interposed a motion for mistrial. The trial court then instructed the assistant solicitor, but without reprimanding him, not to cross examine defendant further concerning his whereabouts during the period in question and instructed the jury to disregard the quoted testimony as evidence. Defendant's counsel then renewed the motion for mistrial and it was overruled. In a subsequent colloquy the assistant solicitor admitted that when he asked the questions he knew defendant was in the penitentiary during the twelve years referred to.

It is axiomatic that the general character of a defendant on trial for the commission of a crime and his character in other transactions is irrelevant unless the defendant himself chooses to put his character in issue. *Code* §§ 38-201, 38-202; *Bacon v. State,* 209 Ga. 261, 262 (71 SE2d 615). "The general rule is that on a prosecution for a particular crime, evidence which

in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible." *Williams v. State,* 152 Ga. 498, 521 (110 SE 286); *Cawthon v. State,* 119 Ga. 395, 408 (46 SE 897); *Cox v. State,* 165 Ga. 145 (1) (139 SE 861). Where evidence of that kind is erroneously admitted, it is naturally prejudical to defendant and requires the grant of a new trial. See *Stanley v. State,* 94 Ga. App. 737 (96 SE2d 195), where it was held to be prejudicial merely to ask the improper question even without eliciting an answer.

There are various exceptions to the general rule. For a statement of those exceptions and extensive citation of authorities see Judge Townsend's dissenting opinion in *Hodges v. State,* 85 Ga. App. 617, 622 (70 SE2d 48). Viewing the quoted cross examination of defendant in light of the entire transcript of the proceedings, we cannot say that this case is governed by any of those exceptions. There is no merit in the State's contention that the defendant put his character in issue by testifying that he sought to surrender to Georgia authorities, rather than be arrested in Florida, where he lived, as it would ruin him in business if he were arrested in Florida. Compare *Wiggins v. State,* 80 Ga. App. 258, 260 (55 SE2d 842); *Folds v. State,* 90 Ga. App. 849, 852 (84 SE2d 584); *Barber v. State,* 95 Ga. App. 763 (2b) (98 SE2d 575). See generally, *Sikes v. State,* 76 Ga. App. 883, 884 (47 SE2d 677); *Carroll v. State,* 77 Ga. App. 251, 253 (48 SE2d 491).

The line of questioning was calculated to place before the jury, indirectly and inferentially, a fact which under the rules of evidence the assistant solicitor would not be permitted to demonstrate directly. Defendant's answers were neither voluntary nor unresponsive. Obviously, the courts cannot condone the apparently purposeful accomplishment by indirection of that which they would not permit to be done directly. In this instance the assistant solicitor was overzealous in the performance of his duty. Judges have previously outlined the spirit of that duty by stating: "While the safety of society requires the faithful prosecution of offenders against the laws, the State

does not ask their conviction but upon a calm and dispassionate investigation of the charges against them." *Jesse v. State,* 20 Ga. 156, 169. "While a solicitor is necessarily a partisan, yet it is his paramount duty 'to subserve public justice' (*Hicks v. Brantley,* 102 Ga. 264, 271 (29 SE 459)), and not merely to convict each defendant charged with a violation of the laws of this State." *Brown v. State,* 57 Ga. App. 864, 865 (197 SE 82). See also: *Berry v. State,* 10 Ga. 511, 522 (6); *Ivey v. State,* 113 Ga. 1062, 1063 (39 SE 423).

"Each case presents a different combination of facts, and must therefore rest on its own bottom, keeping in mind that it is the highest duty to insure a fair and impartial trial to all parties, and not to allow to be injected into the proceedings any illegal element to the prejudice of the defendant's rights in a criminal case, where his liberty and perhaps his life are at stake." *Felton v. State,* 93 Ga. App. 48, 49 (90 SE2d 607). The case of *Smoot v. State,* 146 Ga. 76, 80 (90 SE 715), suggests the following: In some cases of misconduct by a solicitor the injurious effect may be averted by appropriate action and instructions from the court (*Code* § 81-1009); but what would be sufficient in any case would depend on the character of the misconduct, the nature of the case, and the action or instructions from the court relied on to counteract the injurious effect of the misconduct. These may differ in each case. It is not erroneous to refuse to grant a mistrial on account of misconduct of the solicitor if it is certain that no injury could have resulted therefrom to the accused. But if it can be reasonably inferred that the jury were thereby in any way unfavorably affected against the accused a mistrial should be ordered or a new trial granted. In the interest of fair trials it should clearly appear that there was no probability that injury to the accused would result from the misconduct.

The matter of granting a mistrial is largely within the discretion of the trial court, but that discretion will be controlled when it is apparent that a mistrial was essential to preservation of the right of fair trial. Ordinarily, when illegal testimony is placed in evidence, it is not an abuse of discretion to refuse to grant a mistrial if sufficient corrective instructions are given in

ruling the testimony out. *Worthy v. State,* 184 Ga. 402 (3) (191 SE 457); *Stanford v. State,* 201 Ga. 173, 186 (38 SE2d 823); *Fitzgerald v. State,* 82 Ga. App. 521, 525 (61 SE2d 666). This is true even if the illegal testimony has the effect of placing the defendant's character in issue (*Carrigan v. State,* 206 Ga. 707 (3) (58 SE2d 407); *Eden v. State,* 43 Ga. App. 414 (159 SE 134); *Osteen v. State,* 83 Ga. App. 378, 381 (63 SE2d 692)), especially when the testimony is volunteered by the witness and not directly elicited by the solicitor. *Britten v. State,* 221 Ga. 97, 102 (143 SE2d 176); *Waldrop v. State,* 221 Ga. 319, 322 (144 SE2d 372); *Bedgood v. State,* 100 Ga. App. 736, 741 (112 SE2d 430). However, a voluntary statement made by a witness stands on a different basis with reference to a mistrial from that covered by the provisions of *Code* § 81-1009, which has reference to the conduct of attorneys, who are officers of the court. *Payne v. State,* 89 Ga. App. 568, 573 (80 SE2d 93). Mistrial is more likely to be the solution required in those instances where the solicitor directly elicits the improper evidence than in those instances where the witness volunteers the testimony. See *Haynes v. State,* 80 Ga. App. 99, 101 (55 SE2d 646). Where, as here, a prosecuting attorney knowingly injects into evidence an illegal element to the prejudice of the defendant, a mistrial is often the only complete and satisfactory remedy. *Flournoy v. State,* 82 Ga. App. 518, 519 (61 SE2d 556).

In *Johnson v. State,* 36 Ga. App. 127 (135 SE 492), the State directly elicited testimony that the accused had been convicted twice previously for violations of the prohibition law; and in *Reid v. State,* 56 Ga. App. 112, 115 (191 SE 657), the State improperly elicited another type of testimony which was highly prejudicial to the accused. In *Lewis v. State,* 59 Ga. App. 387, 388 (1 SE2d 62) and in *Felton v. State,* 93 Ga. App. 48, supra, witnesses for the State volunteered testimony implicating the accused in other offenses. In each of those cases this court held that the trial court erred in refusing to grant a motion for mistrial notwithstanding that the trial court had instructed the jury to disabuse their minds of the illegal testimony. We are of the opinion that the same situation exists here and that the court's instructions to the jury to disregard the quoted testimony as

evidence were not sufficient to erase from the jurors' minds the prejudice against defendant aroused by forcing upon them the inference that defendant, having spent twelve years of his life in the penitentiary, was a hardened criminal.

It was error to deny defendant's motion to declare a mistrial.

■ *Case No. 43615.* Grady Parker testified that defendant Emory Brown offered him $200 to place dynamite in the victim's dwelling house. On September 10, 1967, Emory Brown and his wife, defendant Orene Brown, and Parker drove to Atlanta together. The two men never discussed anything about the dynamite in Orene's presence. Emory Brown registered at an Atlanta motel, and the three went into the motel room, where the two men prepared the dynamite. Parker could not recall that Orene ever saw the dynamite. The two men might have prepared it while she was in the bathroom. The three then drove to the victim's house in order to locate it. In the early hours of the morning of September 11, the three returned to the house. Parker got out of the car, took the dynamite, which was concealed in a paper sack, entered the premises and attempted to light the fuse. At this point he was captured by the intended victim.

There was no evidence showing that defendant Orene Brown was in any way connected with the transaction except that she was passively present in the automobile with the two men. Without showing that she participated in the felonious design, the evidence was not sufficient to authorize her conviction. Mere proof of presence is not sufficient to render one an aider or abettor or to authorize a conviction. *Thornton v. State,* 119 Ga. 437, 439 (46 SE 640); *Harris v. State,* 19 Ga. App. 741 (2) (92 SE 224); *Gentry v. State,* 65 Ga. App. 100, 102 (15 SE2d 464); *Greeson v. State,* 90 Ga. App. 57, 60 (81 SE2d 839). This requires the grant of a new trial, since the motion for a directed verdict was made prematurely.

■ There is no merit in any of the remaining issues raised on these appeals.

*Judgments reversed. Hall and Quillian, JJ., concur.*