## 75893. THE STATE v. OLIVER.

(372 SE2d 256)

POPE, Judge.

Defendant Berthine Oliver was charged with three counts of child molestation in regard to the two young children for whom she was employed as a babysitter. The case was first called for trial on March 25, 1987. After the jury was chosen but before the jurors had been sworn, defendant challenged the selection of the jury, alleging the prosecutor had exercised his strikes against prospective black jurors in a racially discriminatory manner in violation of the standard set forth in Batson v. Kentucky, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). In response to said challenge, the trial court dismissed the jury and the trial was rescheduled.[1] The trial of the case was recommenced on May 20, 1987. Over a two-day period, the state called eleven witnesses, including one of the victims who was four years old at the time of the alleged incident and six years old at the time of trial. The court conducted a hearing outside the presence of the jury and determined the victim was competent to testify.

The eleventh and final witness for the prosecution was a clinical psychologist who had examined the victim and was called as an expert witness. During the direct examination of the expert witness the prosecutor asked the witness what she looks for in counseling sessions with a child to validate whether or not alleged abuse has occurred. In response, the witness commenced a lengthy discussion of how she attempts to assess the credibility of a child. Defendant's attorney objected to the testimony concerning credibility and moved for mistrial. The jury was excused and a lengthy discussion was conducted on the record between the judge and the attorneys concerning the admissibility of the expert's testimony about the victim's credibility. The

---

[1] Although the order granting defendant's challenge to the jury employed the term "mistrial," the order was not actually a grant of mistrial since the jury had not yet been impaneled and sworn. See Hughey v. State, 180 Ga. App. 375 (2) (348 SE2d 901) (1986).

prosecutor argued he was simply trying to establish that credibility was one of the factors considered by the expert in arriving at her opinion that the child had been molested. The court properly instructed, "[S]he can tell what the child said, what conclusions she arrived at from that, but she ought not to comment on anything as far as the credibility is concerned." The trial judge repeatedly instructed the prosecutor that the expert could not comment upon the victim's credibility. When the jury returned, shortly after recommencing his direct examination of the expert witness, the prosecutor asked: "[I]n your opinion, based on those personal sessions with [the victim], can [she] distinguish between telling the truth and telling a lie?" The expert answered, "Yes, I believe she can." Defendant moved for mistrial and the judge granted defendant's motion.

Defendant then filed a plea in bar arguing the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution precludes her from being retried for the charged offenses. After a hearing on the plea of double jeopardy, the court found it was the prosecutor's intention to cause a mistrial by asking the fatal question in violation of the specific instructions of the court. The court also found evidence of prosecutorial overreaching and harassment. Accordingly, the court granted defendant's plea of former jeopardy. The state appeals.

1. We first address the state's third enumeration of error which argues the trial court applied the wrong standard for determining whether double jeopardy would bar retrial of defendant's case. The United States Supreme Court has articulated a clear and unambiguous standard for barring retrial of a criminal case where the defendant was successful in moving for mistrial. "[T]he circumstances under which . . . a defendant [who successfully moves for mistrial] may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was *intended to provoke the defendant into moving for a mistrial.*" (Emphasis supplied.) *Oregon v. Kennedy*, 456 U. S. 667, 679 (102 SC 2083, 72 LE2d 416) (1982). Prosecutorial misconduct amounting to harassment or overreaching, even if sufficient to justify a grant of mistrial, is nevertheless insufficient to bar retrial "absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." Id. at 676. Accord *Fugitt v. State*, 253 Ga. 311 (319 SE2d 829) (1984); *State v. Whitehead*, 184 Ga. App. 162 (361 SE2d 41) (1987); *Hampton v. State*, 179 Ga. App. 14 (345 SE2d 117) (1986).

In support of the trial court's order, defendant argues the Georgia standard for barring retrial is more protective than the minimum standard imposed by the United States Supreme Court in *Kennedy*. We find no reason for holding the Georgia standard to be more pro-

tective than that provided by federal law. The Fifth Amendment to the United States Constitution states: "No person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb. . . ." The Georgia Constitution states: "No person shall be put in jeopardy of life or liberty more than once for the same offense except . . . in case of mistrial." Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII. If anything, the Georgia Constitution is less protective than the Fifth Amendment, for it recognizes an exception to the bar against double jeopardy when the first trial ends in mistrial. See *Benford v. State*, 164 Ga. App. 733 (2) (298 SE2d 39) (1982) (where this court concluded the federal constitution provides a broader former jeopardy defense than state statutory law, OCGA § 16-1-8).

Defendant cites to *Morris v. State*, 180 Ga. App. 896 (350 SE2d 851) (1986) for support of her argument that mere prosecutorial overreaching is still sufficient under Georgia law to bar retrial. However, the language relied upon by defendant was quoted in *Morris* from *Studyvent v. State*, 153 Ga. App. 161 (264 SE2d 695) (1980), a Georgia case predating the *Kennedy* decision by the United States Supreme Court. Even the *Studyvent* opinion involved the application of federal constitutional principles and not those of our state constitution. *Hampton v. State*, 179 Ga. App. 14 n. 1 (345 SE2d 117) (1986). Moreover, the *Studyvent* opinion "emphasized the importance of determining whether or not there has been intentional misconduct on the part of the prosecution, and to that extent it previsioned *Oregon v. Kennedy*, [supra]." *Benford v. State*, supra at 734. The issue presented on appeal in *Morris* was whether the prosecutor had deliberately "prompted" defendant to move for mistrial. Thus, all cases decided in Georgia since the ruling of the United States Supreme Court in *Kennedy* have applied the "intent to provoke a mistrial" standard set forth in *Kennedy*. See, e.g., *Fugitt v. State*, supra; *State v. Whitehead*, supra; *Wicker v. State*, 181 Ga. App. 612 (353 SE2d 40) (1987); *Hampton v. State*, supra. We reject defendant's argument that mere overreaching or harassment by the prosecutor, without a finding the prosecutorial misconduct was intended to subvert the protections of the Double Jeopardy Clause, would bar retrial of defendant's case pursuant to Georgia law.

The trial court in this case based its grant of the motion to bar retrial partially upon a finding of prosecutorial overreaching and harassment. This conclusion was based on the earlier finding of impermissible use of peremptory strikes and upon a finding the prosecutor had attempted to influence the defendant's husband to convince the defendant to plead guilty. These findings alone would not support the grant of defendant's plea of double jeopardy according to the rule set forth in *Kennedy*. However, the court's order does include a finding that the prosecutor intended to cause a mistrial by asking the fatal

question. The crucial inquiry on appeal, then, is whether this finding is supported by the record.

2. The state's first two enumerations of error argue the court improperly found the prosecutor intended to cause a mistrial. First, the state argues the question and answer which prompted the defendant's objection were insufficient to justify a mistrial. With this argument, we disagree.

The state argues the jury was entitled to hear testimony concerning the competency of the minor witness to testify. "The competency of a witness shall be decided by the court." OCGA § 24-9-7 (a). In this case, the court held a competency hearing outside the presence of the jury and ruled the minor witness was competent. No objection was made by defendant to that ruling. We agree with the state that the jury also had a right to hear evidence concerning the child's competency to testify, for it is ultimately the jury which must decide what credit to place on that testimony. See *Frasier v. State*, 143 Ga. 322 (5) (85 SE 124) (1915); *Young v. State*, 122 Ga. 725 (1) (50 SE 996) (1905). However, any evidence concerning the child's understanding of the oath, intellectual maturity or any other factor affecting her capacity to testify is to be developed from the examination of the child herself. See *Schamroth v. State*, 84 Ga. App. 580 (1b) (66 SE2d 413) (1951); *Webb v. State*, 7 Ga. App. 35 (1) (66 SE 27) (1909). The record shows the prosecutor was allowed to present such evidence by questioning the minor witness in the presence of the jury concerning her knowledge of the difference between the truth and a lie. In no circumstance may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth. An expert witness may not testify as to his opinion of an ultimate issue of fact unless the inference to be drawn from the evidence is beyond the ken of the jurors. *Allison v. State*, 256 Ga. 851 (5) (353 SE2d 805) (1987). Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury. OCGA § 24-9-80. An expert witness may not testify as to his opinion of the victim's truthfulness. See *United States v. Azure*, 801 F2d 336 (II) (8th Cir. 1986); *United States v. Binder*, 769 F2d 595 (4) (9th Cir. 1985); *State v. Jackson*, 721 P2d 232 (Kan. 1986). Accord *State v. Butler*, 256 Ga. 448, 450 n. 4 (349 SE2d 684) (1986).[2] An

---

[2] *Eberhardt v. State*, 257 Ga. 420 (4) (359 SE2d 908) (1987), in which a psychiatrist was permitted to testify that the alleged victim was capable of "knowing truth from nontruth," is distinguishable. First, in that case there was evidence the witness was suffering from mental illness and, therefore, whether this illness affected her competency to testify was not within the juror's realm of knowledge. Secondly, the question concerning the witness' ability to distinguish fact from fiction had been asked and answered earlier without objection, so that the subsequent questioning on the subject was harmless. In the case at hand, defendant made a timely objection to the questioning of the expert witness on the victim's credibility.

expert witness may testify generally about the ability of children of a certain age to distinguish truth from falsity. The witness may also express an opinion as to whether medical or other objective evidence in the case is consistent with the victim's story. However, an expert witness may not put his or her stamp of believability on the victim's story. *Azure*, supra. The lower court properly granted mistrial in this case.

3. Although the fatal question was improper and provided ground for declaring a mistrial, we find no evidence to support the trial court's conclusion that the prosecutor intended to cause a mistrial.

The intent of the prosecutor in asking an improper question of a witness is to be inferred from the objective facts and circumstances of the case. *Oregon v. Kennedy*, supra. The rationale or justification given by the state for the objectionable testimony is relevant to a determination of whether prosecutorial conduct was deliberately intended to cause a mistrial. See *State v. Maddox*, 185 Ga. App. 674 (365 SE2d 516) (1988). In response to each objection by the defendant to questions concerning the victim's credibility, the prosecutor vigorously argued the questions were not objectionable. First, he argued he was trying to establish that credibility was one of the factors considered by the expert in arriving at her opinions concerning the victim. At the hearing on defendant's motion for mistrial and again at the hearing of defendant's motion to bar retrial, the prosecutor steadfastly maintained the expert's testimony was admissible to establish the victim's competency to testify and was not presented to bolster credibility. Such testimony was not admissible, as discussed in Division 2 of this opinion. Although the prosecutor was mistaken or confused as to the proper scope of expert testimony, the record shows the prosecutor's mistakes were made in good faith and reveals the state's intention was not to provoke mistrial. See *State v. Whitehead*, supra. It is true the prosecutor in this case violated the trial court's instruction not to question the expert concerning the victim's credibility. However, in *Benford v. State*, supra, we held retrial for a third time was not barred by judicial misconduct even though the trial court failed at the second trial to follow the clear holding of this court on the appeal of the first trial and, in effect, repeated the same fatal error which had resulted in the reversal of the first conviction. Likewise, failure of the prosecutor in this case to follow the instruction of the trial court to avoid questions concerning a witness' credibility does not bar retrial because it appears from the record the error was made in a good faith, though mistaken, distinction between evidence concerning credibility and evidence concerning competency to testify. Intent to ask the fatal question should not be confused with intent to violate the defendant's constitutional rights. The prosecutor's intent

to ask the fatal question "does not establish that the state intended to subvert the protections afforded by the double jeopardy clause." *State v. Whitehead,* supra at 164.

The prosecutor in this case had called all his witnesses and there is no reason to believe the evidence was anything less than the state had expected it to be. "Defendant's protestations to the contrary, the prosecution had already built its case against the defendant and had no reason to abort the first trial by forcing a mistrial." *Hampton v. State,* supra at 15. Therefore, we find no evidence to support the trial court's finding that the conduct of the prosecutor revealed an intent to subvert the protections afforded by the Double Jeopardy Clause.

I concur with the dissenting opinion that prosecutorial misconduct should not be condoned or encouraged. But our holding in this case in no way ties the hands of the trial judge to respond to prosecutorial misconduct. The award of mistrial is the appropriate remedy for curing the prejudice against the defendant created by the prosecutor's error and the appropriate sanction to discourage misconduct by the prosecuting attorney. The bar of double jeopardy is such an extreme sanction against the interest of the state in prosecuting one who has been indicted for a crime that it should be applied strictly and only when the circumstances clearly show the prosecutor intended "to subvert the protections afforded by the Double Jeopardy Clause." *Oregon v. Kennedy,* supra at 676.

4. The order granting defendant's plea in bar shows the order was based in part upon (1) a finding the prosecutor had improperly communicated with defendant's husband in an attempt to convince the defendant to plead guilty; (2) the earlier finding of impermissible use of peremptory strikes at the first voir dire of the jury; and (3) testimony of one of the jurors that, at the time mistrial was declared, she would have voted for acquittal. Even if the prosecutor acted improperly in communicating with defendant's husband when he arrived at the courthouse in response to his subpoena to trial, which we do not here address, such communications would not meet the test of *Kennedy* to show intent to subvert the protections afforded by the Double Jeopardy Clause. The impermissible use of peremptory strikes at the first call of the case was remedied by the grant of defendant's challenge to the jury pursuant to *Batson v. Kentucky.* It cannot be said that the disqualification of the first jury subjected defendant to former jeopardy since the earlier jury was never impaneled. Finally, it was improper for the judge to consider the testimony of the juror as to what her verdict would have been at the time mistrial was declared for the jury had not yet heard the remainder of the testimony of the state's expert witness nor any of the evidence which might have been presented by the defendant. This testimony and the additional findings of the trial court do not support the order barring retrial of de-

fendant's case.

5. The earlier order granting defendant's challenge to the jury pursuant to *Batson v. Kentucky* is not properly before the court on this appeal of the order barring retrial. Therefore, we need not address the state's final enumeration of error.

*Judgment reversed. Deen, P. J., McMurray, P. J., and Banke, P. J., concur. Beasley, J., concurs specially. Carley, J., concurs in judgment only. Birdsong, C. J., Sognier and Benham, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I concur with the majority opinion except as follows.

1. The witness had been recognized by the court as qualified to give her opinion "in the field of clinical psychology as an expert." She had testified that in such capacity, she counseled with the child in four counseling sessions after the child had been referred to her under the district attorney's victim assistance program. Since she was called to give her opinion that the child had been abused, the State proceeded to lay the foundation for such an opinion. Part of the basis upon which she formed that opinion was what the child said to her in the counseling sessions, as well as her observation of the child and the results of psychological tests given. She described in general the capacity of young children to distinguish fact from fancy and about their perception capacity.

Defendant stopped the proceeding to state that the witness should not be permitted to testify that the witness was credible, as that was a question reserved to the jury. There followed a debate in which the court ruled that the witness could not testify "as to the credibility of the child." Upon request by defendant, the jury was instructed that a witness could not testify as to the victim's credibility and that it was the jury's province to determine credibility.

Questioning resumed, and the witness testified about her counseling sessions with the child. There was no objection to the question, "Now, in your professional opinion, was the number and lengths of the times that you counseled Ashley sufficient for you to form an expert opinion in which you had confidence in its reliability?"; nor in the answer, "Yes, it was." Then the State asked: "And in your opinion, based on those personal sessions with Ashley, can Ashley distinguish between telling the truth and telling a lie?" The response was: "Yes, I believe she can." The motion for mistrial followed.

In argument supporting the motion at that time, defendant's position was that this was prohibited testimony about credibility. The State's position was that it was not about credibility, which it conceded was a question for the jury, but about the child's ability to recognize or discriminate or perceive between truth and lie. The State also conceded that competency to testify was initially a question to be

resolved by the court before a possibly incompetent witness would be permitted to testify. But it insisted that the expert witness within whose area of expertise this subject fell, could acquaint the jury with her opinion that the child was capable of distinguishing between truth and lie.

The court, however, saw the evidence as invading the jury's province on the question of the child's credibility as a witness and granted the mistrial. This was explicitly repeated in the written order on the mistrial.

The difference between the two subjects, although the edges are not sharp, is great enough for the lack of prosecutorial misconduct to be shown as a matter of law. The State had an arguable justification for insisting on the difference and asking the objected-to question as being on the subject of competency and not on the subject of credibility. Competency may be a jury question, *Goodson v. State*, 162 Ga. 178 (132 SE 899) (1926) and *Scott v. State*, 57 Ga. App. 489 (6) (195 SE 923) (1938), and here that subject related to the expert's analysis of the child's stage of understanding, as a foundation for her ultimate opinion on child abuse.

Even assuming that the State was in error insofar as admissibility of the answer to this particular question is concerned, a proposition I am not prepared to accept, it cannot be said that the State deliberately created error by intentionally injecting inadmissible evidence such as would cause mistrial. Defendant himself found it necessary to rely on cases from other jurisdictions to support his position, the law on the matter not being clear. That is, there is no case in Georgia holding that when an expert who has professionally counseled with a young child who allegedly has undergone sexual abuse, that expert cannot testify that the particular child is or is not developmentally capable of distinguishing between truth and falsehood, or of comprehending the difference.

Thus, even if a mistrial was called for, what prompted it did not breach the standard by which a claim of Fifth Amendment violation is measured, as ordained in *Oregon v. Kennedy*, 456 U. S. 667 (102 SC 2083, 72 LE2d 416) (1982).

2. This brings me to the second point. The defendant relied in the court below solely on the Fifth Amendment's proscription against double jeopardy. The plea of former jeopardy is based expressly on this federal constitutional ground, insofar as the alleged improper question is concerned, and the brief below in support of it expands on the Fifth Amendment, *Oregon v. Kennedy*, and applications thereof in state cases. The court ruled on the basis of federal constitutional law, citing *Oregon* and "The Double Jeopardy Clause" in its conclusions of law.

Thus, the state constitutional ground was not raised below and

should not be addressed here for the first time. See *State v. White-head*, 184 Ga. App. 162 (361 SE2d 41) (1987) [physical precedent]. See also *Lee v. State*, 177 Ga. App. 698 (340 SE2d 658) (1986); *State v. Camp*, 175 Ga. App. 591 (1) (333 SE2d 896) (1985).

3. Even if a state constitutional basis were properly before us, I could not agree with the categorical statement that the Georgia Constitution's double jeopardy provision is less protective than the Fifth Amendment. Just because the words are not identical does not mean that they are not construed the same by the two governing supreme courts respectively, or that the state supreme court has not or cannot construe the State provision more broadly in this regard. See Linde, "E Pluribus — Constitutional Theory & State Courts," 18 Ga. L. Rev. 165, 181, discussing text methodology (1984);[1] "Developments in the Law: The Interpretation of State Constitutional Rights," 95 Harv. L. Rev. 1324, 1356 (1982); Williams, "Methodology Problems in Enforcing State Constitutional Rights," 3 Ga. State Univ. L. Rev. 143 (1986-87). Georgia statutory law, of course, provides more expansive double jeopardy rights. OCGA §§ 16-1-6; 16-1-7; 16-1-8. *State v. Estevez*, 232 Ga. 316 (1) (206 SE2d 475) (1974); *Tabb v. State*, 250 Ga. 317, 318 fn. 1 (297 SE2d 227) (1982).

The Supreme Court of Georgia is the final construer of our state constitution whereas the United States Supreme Court is the final interpreter of the federal constitution. See *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1983); *Massachusetts v. Upton*, 466 U. S. 727 (104 SC 2085, 80 LE2d 721) (1984); *Lee v. State*, supra.

BENHAM, Judge, dissenting.

There are several points in the majority opinion with which I am in full agreement: that the grant of a mistrial was proper; that the *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), issue is not properly before this court; that the standard to be applied by a trial court in deciding whether a retrial is barred after a mistrial is the standard enunciated in *Oregon v. Kennedy*, 456 U. S. 667, 679 (102 SC 2083, 72 LE2d 416) (1982) ("the conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial"); and that the prosecutorial overreaching and harassment found by the trial court (impermissible use of peremptory strikes and efforts to persuade appellee's husband to convince her to plead guilty) are not *alone* sufficient to support a plea of

---

[1] "The right question is not whether a state's guarantee is the same as or broader than its federal counterpart as interpreted by the Supreme Court. The right question is what the state's guarantee means and how it applies to the case at hand. The answer may turn out the same as it would under federal law. The state's law may prove to be more protective than federal law. The state law also may be less protective. In that case the court must go on to decide the claim under federal law, assuming it has been raised." Id. at 179.

double jeopardy. I cannot agree, however, that all of the prosecutor's misconduct should not be considered on the issue of double jeopardy, or that there was no evidence of intent to provoke a mistrial.

It is appropriate to begin this discussion with a consideration of the proper role of a prosecuting attorney. "Judges have previously outlined the spirit of [a prosecuting attorney's] duty by stating: 'While the safety of society requires the faithful prosecution of offenders against the laws, the State does not ask their conviction but upon a calm and dispassionate investigation of the charges against them.' [Cit.] 'While a [prosecuting attorney] is necessarily a partisan, yet it is his paramount duty "to subserve public justice" [Cit.], and not merely to convict each defendant charged with a violation of the laws of this State.' [Cits.]" *Brown v. State*, 118 Ga. App. 617, 619 (165 SE2d 185) (1968). We cannot tolerate a prosecutorial attitude of "win at any cost," an attitude encouraged by the knowledge that the worst result likely will be a mistrial followed by another opportunity to employ the same reckless abandon which led to the mistrial.

The logical consequence of such purposeful misbehavior is that the prosecutor not be permitted another chance to prosecute that particular case, but with so subjective a standard as the intent of the prosecuting attorney to provoke a mistrial, such a result is difficult to reach: it cannot reasonably be expected that a prosecuting attorney will admit that the specific intent of particular conduct was to cause a mistrial. Indeed, in the present case, the prosecuting attorney expressly disclaimed such intent. Nonetheless, the trial court found against that prosecuting attorney on several other issues concerning which he denied impropriety, and I believe there was ample evidence to permit the trial court to reach a finding contrary to the prosecuting attorney's protestations on the issue of intent as well.

I recognize that intent is to be inferred from objective facts and circumstances (*Oregon v. Kennedy*, supra), and agree with the majority that the rationale or justification advanced by the prosecuting attorney is relevant to the issue of intent. That justification cannot, however, be considered to be controlling. We must not tie the hands of our trial judges by restricting unduly their consideration of all the prosecuting attorney's actions in determining whether it can be inferred that the conduct of the prosecuting attorney was intended to provoke a mistrial; we must permit them to consider on that issue the totality of the circumstances involving the prosecution of the case and the prosecuting attorney's conduct with relation thereto.

Such a consideration in this case warrants the inference that the prosecuting attorney's intent was to employ tactics which, if permitted, would tip the scales of justice inexorably toward conviction and, if not permitted, would provoke a meritorious motion for mistrial by the defendant, leaving the way clear for a retrial.

The majority's analysis, that since there was no conclusive evidence that the State was losing, there could be no intent to cause a mistrial, places an unbearable burden on the trial court and shifts attention away from what should be the primary focus in an inquiry such as this, the conduct of the trial by the prosecuting attorney. The burden that would be placed on a trial court attempting to employ the analysis used by the majority would be to weigh the evidence presented and decide which side was going to win, or to attempt to emulate the prosecuting attorney's thought process and decide whether the prosecuting attorney thought the jury would convict or acquit. Such an effort is not feasible and should not be required of our trial judges.

The focus, instead, should be on the course of conduct in which the prosecuting attorney has engaged. Where, as here, the prosecuting attorney has persistently employed objectionable and illegal tactics, such as the racially motivated use of peremptory strikes, efforts to undermine the defense by attempting to influence the defendant's husband, and a flagrant disregard of the trial court's evidentiary ruling, it may fairly be inferred that the conduct was intended to provoke a mistrial.

The majority's approach to the present case, finding no motive for causing a mistrial and accepting the prosecuting attorney's self-serving assertion that he did not intend to cause a mistrial, ignores the fact that the trial judge was present for the trial and for the hearing on appellee's plea of double jeopardy, and had an opportunity to see and hear the conduct of the trial. Worse, perhaps, is the undermining of the trial judge's authority by the majority's finding that the prosecuting attorney's blatant disregard of a ruling because he disagreed with it was done in good faith.

I believe it is our duty to provide the trial judges of this State with the means of curbing prosecutorial misconduct. That will be done by affirming the decision of the trial court in this case, a decision set out in an order reflecting careful consideration of the totality of the circumstances and a due regard for the right of defendants in criminal cases to receive a fair trial. To reverse this decision sends a clear message to the prosecuting attorneys of this State that they are free to employ Machiavellian tactics, and to the trial courts of this State that their hands are tied.

Because I cannot participate in the sending of such a dangerous message, I must dissent from the judgment of reversal in this case.

I am authorized to state that Chief Judge Birdsong and Judge Sognier join in this dissent.

DECIDED JULY 11, 1988 —
REHEARING DENIED JULY 27, 1988

Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney, for appellant.
Kenneth D. Kondritzer, for appellee.