## A91A1290. JACOBSON v. THE STATE.
(412 SE2d 859)

POPE, Judge.

Defendant Ronald Richard Jacobson was convicted of kidnapping with bodily injury, aggravated assault and aggravated sodomy. The trial court merged the aggravated assault and kidnapping charges for the purpose of sentencing. Defendant appeals the denial of his motion and amended motion for new trial.

1. Defendant first challenges the sufficiency of the evidence. The victim testified that the defendant, whom she had previously dated, entered the Golden Pantry Convenience Store at Highway 142 and Interstate 20 where she was working at approximately 4:00 a.m. on January 6, 1990. Another employee was in the store at the time and saw the defendant drive up but left when the victim indicated she knew the defendant. Defendant entered the store and purchased a pack of cigarettes; he then came around the counter to where the victim was standing and told her she was going with him. The victim refused and defendant told her he had a knife; the victim then felt something which she described as a stinging sensation on the side of her head and when she reached up and touched her head she saw that there was blood on her hand. Defendant dragged her outside and put her in his truck and drove away from the store. Once on I-20 the defendant told the victim to undress. The defendant hit the victim several times, grabbed her by her hair and forced her to put her mouth on his penis while he continued to drive. Defendant next stopped at a rest area and raped the victim. After they got back in the truck and back on the highway, defendant again stopped the truck and took the victim into a wooded area where he unsuccessfully tried to put his penis in her anus. The defendant and the victim got back in the truck and defendant drove to Wesley Chapel Road where he parked behind a van. Defendant again raped the victim and then placed his penis in her anus, while inserting a flashlight into her vagina. Defendant then forced the victim to place her mouth on his penis. Following these acts, defendant got back on I-20 and allowed the victim to dress. Defendant continued to hit the victim and at one point tried to choke her because, as the defendant explained to the victim, he feared she would tell somebody about the attack if he let her leave. The victim assured the defendant she would not tell anyone about the attack and the defendant threatened to kill her if she did. While travelling on I-20 the truck ran out of gas; when defendant left to get gas the victim made her way to a nearby house where police and an ambulance were summoned. The owner of the house testified that the victim arrived at his house between 5:00 and 6:00 a.m. bleeding very badly and that she told him she had been kidnapped and raped. The victim testified she did not originally identify the defendant as the person who had

committed the crimes against her because she was afraid that he would kill her. The victim did, however, subsequently identify the defendant as her assailant. Robert Knight, the employee who was with the victim in the store the night of the attack also identified the defendant as the person who entered the store on that date and was identified by the victim as her former boyfriend.

Defendant also testified at trial and denied the charges against him, stating that he had been at his girl friend's home in the Chattanooga, Tennessee/Rossville, Georgia, area at the time of the incident. His girl friend's mother and his girl friend also testified that defendant was at their home at that time. Defendant explained that his pretrial statement to police that he was "at home" at the time of the incident referred to his girl friend's home and not his home in Atlanta. Defendant also testified the reason he told police that his roommate left for work at 6:45 the morning of the incident was because that was the time his roommate customarily left for work, not because he witnessed his roommate leaving for work that particular morning.

" 'It is the function of the jury to determine the credibility of the witnesses, including that of the defendant. The jurors must weigh and resolve any conflicts presented by the evidence. The appellate court must view the evidence in the light most favorable to the jury's verdict. (Cit.)' *King v. State*, 157 Ga. App. 733, 734 (1) (278 SE2d 491) (1981). The evidence presented at trial was sufficient to enable any rational trier of fact to find [defendant] guilty beyond a reasonable doubt of the [crimes] charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Rayburn v. State*, 194 Ga. App. 676 (1) (391 SE2d 780) (1990). Accord *Seidel v. State*, 197 Ga. App. 14 (1) (397 SE2d 480) (1990).

2. (a) Defendant next contends his character was improperly injected into evidence by testimony that he turned himself in to the pardons and parole office on the request of his parole officer. The record shows the testimony concerning defendant's turning himself in to the pardons and parole office was elicited by defense counsel on cross-examination of a State's witness in an apparent attempt to show defendant voluntarily surrendered to authorities. On rebuttal, the State questioned the witness concerning whether defendant voluntarily turned himself in or whether he was requested to come in. The witness responded that defendant was requested to come in by his parole officer. Clearly the State was entitled to question further the witness concerning whether the defendant voluntarily turned himself in to authorities, once the defendant initiated this line of inquiry. " '(A) party will not be heard to complain of error induced by his own conduct. . . . (Cits.)' [Cit.]" *Littlefield v. State*, 197 Ga. App. 343, 344 (2) (398 SE2d 375) (1990). Moreover, "[t]his court has previously held that a passing reference to a defendant's record does not place his

character in evidence. [Cits.]" *Johnson v. State*, 256 Ga. 604, 605 (2) (351 SE2d 623) (1987).

(b) Defendant next contends his character was improperly injected into evidence by testimony from a State's witness concerning defendant's in-custody statement that he had active, infectious genital herpes at the time the crime was committed and by questions by the State while cross-examining the defendant concerning whether defendant knew "what AIDS is." Again we find no error. The record shows the testimony relating to defendant's in-custody statement was admitted without objection and after defense counsel stipulated that the statement had been voluntarily made. Likewise, the defendant did not object or move for a mistrial in response to the questions propounded by the State now challenged on appeal. " 'Objections not raised at trial cannot be raised for the first time on appeal, as they are deemed waived. (Cit.)' *Fancher v. State*, 190 Ga. App. 438, 439 (1) (378 SE2d 923) (1989)." *Hight v. State*, 195 Ga. App. 727, 730 (6) (394 SE2d 636) (1990).

3. Defendant also contends the in-court identification of defendant by Robert Knight was tainted by an illegally suggestive pretrial identification of defendant by the witness. Specifically, defendant argues the pretrial identification by the witness was based "upon a single photo viewing of [defendant's] driver's license photo, and no others." As to this issue, the record shows one of the investigating officers testified that the witness made a statement and "gave" him a possible suspect. The officer also testified that he obtained a photograph of the defendant from the driver's license section of the Georgia State Patrol headquarters and that the photograph was used in his investigation of the crime. The officer did not testify that Knight identified the suspect from the driver's license, or even that the driver's license photograph was shown to Knight. " 'We will not presume error from a silent record. The defendant has the burden of showing error affirmatively by the record and this burden is not discharged by recitations in the brief. [Cit.]' [Cit.]" *Williams v. State*, 188 Ga. App. 496, 499 (3) (373 SE2d 281) (1988).

4. Defendant next contends the trial court erred in admitting a summary of defendant's out-of-court statement which had not been provided to him upon request as required by OCGA § 17-7-210. As to this issue, the record shows defendant was provided with a summary made by one of the officers who interviewed him and that the officer was allowed to read the summary to the jury without objection by the defendant. See Division 2 (b), supra. On rebuttal, another investigating officer testified that he also made a summary of defendant's statement and defendant objected to the admission of this statement on the ground that it had not been provided to him pursuant to his request under OCGA § 17-7-210. The trial court overruled defendant's

objection and found that testimony concerning the second statement was admissible. Defendant did not renew his objection or move for a mistrial at this time. "A litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal." (Citations and punctuation omitted.) *Pressley v. State*, 197 Ga. App. 270, 271 (398 SE2d 268) (1990). Moreover, although the record reveals the officer testified he had compared the two summaries and they were "essentially the same," it does not appear, contrary to defendant's enumeration of error on appeal, that the second summary actually was admitted into evidence at trial. Consequently, we find no merit to this enumeration.

5. Defendant argues his trial counsel was ineffective. "The bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. In order to prevail on an ineffectiveness claim, a convicted defendant must show (1) that counsel's performance was deficient, i.e., that counsel's performance was not reasonable under all the circumstances, and (2) that this deficient performance prejudiced the defense, i.e, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The complaining defendant must make both showings." (Citations and punctuation omitted.) *Richardson v. State*, 194 Ga. App. 358, 358-359 (390 SE2d 442) (1990).

(a) Defendant first contends his trial counsel was ineffective because he failed to object when defendant's character was wrongfully placed into evidence. See Division 2, supra. However, as held in Division 2 (a), "a passing reference" to a defendant's prior criminal record does not place his character in evidence. Moreover, although defendant contends on appeal that his trial counsel should have objected to testimony concerning sexually transmitted diseases because this testimony made defendant appear promiscuous (see Division 2 (b)), it is clear from defendant's testimony that part of his trial strategy was to convince the jury that he could not have committed the acts with which he was charged because at the time these acts were committed he had an active case of genital herpes. "This court has repeatedly held that trial strategy and tactics do not equate with ineffective assistance of counsel." (Punctuation omitted.) *Foreman v. State*, 200 Ga. App. 400, 401 (3) (408 SE2d 178) (1991).

(b) Defendant's contention that trial counsel was ineffective because he failed to renew his objection and preserve the record for appeal after a photographic Identikit was admitted into evidence is without merit in that defendant fails to specify how he was harmed by the introduction of the Identikit. Defendant further contends his

trial counsel was ineffective because he failed to preserve the issue of the voluntariness of defendant's pretrial oral statement, failed to preserve his objection to or ask to review the "second" summary of defendant's statement, failed to renew his objection to testimony concerning explanations for the crime scene and waived his right to object to the trial court's charge to the jury. These arguments likewise must fail because defendant does not say how he was harmed by trial counsel's inactions.

(c) As stated in Division 3, the record fails to support defendant's argument on appeal that defendant was identified by Knight after an improper pretrial photographic display. Consequently, defendant's contention that his counsel was ineffective because he failed to object to Knight's trial testimony concerning his identification of the defendant also is without merit.

(d) Defendant also maintains he was prejudiced because the trial court rebuked and admonished defense counsel for wrongfully questioning the victim about her "relationship" with a witness and because defense counsel argued to the jury that the victim had been committed to "GMHI." The transcript shows that, although there was extensive discussion about trial counsel's use of the word "relationship" in questioning the victim, the jury was not present during this discussion. Although the trial court subsequently instructed the jury that they were not to infer a sexual or romantic relationship from the use of the word "relationship," we fail to see how this instruction prejudiced the defendant. Likewise we fail to see how the defendant was prejudiced by trial counsel's erroneous statement in closing argument that the victim had been committed to "GMHI" for a few days when the defendant testified he had visited the victim shortly before the incident because she was "talking suicide" and had "a history of mental problems." Moreover, any "rebuke" from the court concerning trial counsel's erroneous statement occurred outside the presence of the jury, and thus could not have prejudiced the defendant.

"In determining the effectiveness of counsel, this court looks to the totality of the representation provided by counsel. A defendant's right to effective assistance of counsel does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel . . . likely to render *and rendering* reasonably effective assistance." (Citation and punctuation omitted.) *Richardson,* supra at 361. " 'Although *arguendo* (defendant's) representation may have been less than perfect, there is no indication in the record that the conduct of (his) counsel met the *Strickland* (v. *Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)) criteria denoting ineffective assistance. A defendant is entitled not to perfect representation but to "reasonably effective assistance." See *Gabler v. State,* 177 Ga. App. 3, 6 (338 SE2d 469) (1985). The burden is on the party alleging error to show it af-

firmatively by the record, and when he does not do so, the judgment is assumed to be correct and must be affirmed. *Griner v. State*, 192 Ga. App. 283 (384 SE2d 398) (1989).' *Anderson v. State*, 197 Ga. App. 54, 55 (397 SE2d 557) (1990). ' " " 'A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. . . .' " ' (Cit.) The trial court's finding in the instant case is not clearly erroneous. *Harris v. State*, [198 Ga. App. 503 (402 SE2d 62) (1991)]." *Foreman*, supra at 401.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 5, 1991.

*Steven A. Hathorn*, for appellant.
*Alan A. Cook, District Attorney*, for appellee.