A92A1855. WILLIAMSON v. THE STATE.
(428 SE2d 628)

. ANDREWS, Judge.

Williamson was tried and convicted of child molestation and aggravated child molestation. Count 1 of the indictment charged Williamson with aggravated child molestation in that he forced the victim to perform an act of sodomy on him on July 3, 1990; and the second count of the indictment charged Williamson with child molestation in that between January 1, 1990 and July 4, 1990, he took improper and indecent liberties with the victim in order to satisfy his sexual desires.

Evidence at trial was that on July 3, 1990, Williamson was in the bedroom watching television with the mother of the four-year-old victim, with whom he shared the house. The doorbell rang and the victim's mother left the bedroom to talk to an insurance man. When she returned to the bedroom, Williamson was seated on the edge of the bed and the victim was on the floor between his legs. Williamson looked startled and the mother of the victim noticed that he was sexually aroused. When her mother asked her what was wrong, the victim cried but did not offer an explanation. Several days later the child reported to her 16-year-old cousin that Williamson had forced her to perform oral sex on him.

The victim was examined by a pediatrician, who testified at trial. She testified that the victim had told her that Williamson had forced her to perform oral sex upon him and had put his hand in her panties and touched her bottom and put his penis on her shoulder. The results of the medical examination were consistent with the child's report and were also consistent with the victim having been forced to have intercourse.

At trial, the clinical social worker to whom the victim was referred testified. She stated that the victim had told her that Williamson forced her to have oral sex and that the child displayed manifestations of the child abuse accommodation syndrome, including dreams involving her father and bed wetting.

The victim's cousin, to whom the victim first related the molestation, testified. He stated that the victim related that Williamson forced her to perform oral sex and that Williamson tried to stick his penis in her bottom.

The investigating detective testified that the victim told him that Williamson touched her private parts with his penis and forced her to perform oral sex. The victim's mother testified that the victim told

her that Williamson forced her to perform oral sex on him.

The court's narrative for the record, outside the presence of the jury, was that the victim demonstrated with the anatomically correct dolls that Williamson had forced her to perform oral sex and that he placed his penis in the area of her private parts.

The trial court denied Williamson's motion for a new trial and he appeals.

1. In his first enumeration, Williamson claims that the trial court violated his constitutional right to be present at all stages of the proceedings against him when it allowed his attorney to waive his presence at voir dire without first ascertaining on the record whether or not he had in fact knowingly waived this right.

An accused has the right to be present during jury selection. *Allen v. State*, 199 Ga. App. 365 (405 SE2d 94) (1991); *Fictum v. State*, 188 Ga. App. 348 (373 SE2d 54) (1988). However, the right may be waived in defendant's presence or with his acquiescence.

In the instant case, the record supports the trial court's finding that there was no error. Williamson's counsel filed a motion for individual voir dire and for sequestration of jurors during voir dire. When the case was called to trial, there was a bench conference during which counsel waived defendant's presence during jury selection. Williamson was present at the start of the trial. His counsel reiterated this waiver in defendant's presence in open court; the transcript of the proceedings contains this waiver. Thereafter, the trial court granted defendant's motion for individual voir dire and the court and both parties' counsel conducted voir dire in the jury room individually, while Williamson remained in the courtroom.

Williamson argues now that there is nothing in the record to indicate that he agreed to this waiver. At the hearing on the motion for a new trial, Williamson testified that he was not informed of his right to be present at voir dire and that he had not agreed to the waiver. Nevertheless, he acknowledged that he was present in the courtroom when defense counsel announced that he would waive his right to be present for voir dire. Williamson's trial counsel testified at the hearing on the motion for new trial and stated that although he could not specifically recall the details of this case, his normal practice would have been to send Williamson a copy of the motion for individual voir dire and to explain the waiver to him.

Because the trial court did not directly address Williamson on the record, the question presented here, as in *Allen*, supra, is whether Williamson subsequently acquiesced to his attorney's waiver of his presence at jury selection. We find that the record supports the trial court's conclusion that Williamson was present for and acquiesced in the waiver. Accordingly "[b]ecause evidence was presented which would support a finding that defendant acquiesced to his attorney's

choosing a jury in his absence, the denial of the motion for new trial should not be disturbed. [Cit.]" *Allen*, supra at 368.

2. Secondly, Williamson argues that he received ineffective assistance of counsel in violation of his federal and state constitutional rights. Schumacher was appointed as Williamson's attorney in March 1991. Williamson's attorney at the time the case was originally called to trial in March 1991 was removed by the trial court because he was experiencing hearing problems. The case was called for trial again with Schumacher representing Williamson in June 1991.

A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23 (1) (397 SE2d 484) (1990). Here, Williamson must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66, 69 (8) (410 SE2d 173) (1991). "[T]o establish ineffective assistance of counsel, [a defendant] must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. [Cits.]" *Gross v. State*, 262 Ga. 232, 233 (1) (416 SE2d 284) (1992). The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. *Gross*, supra at 233-234 (1). Here, Williamson has not established that he was denied reasonably effective assistance of counsel.

Williamson argues that his second attorney, Schumacher, was ineffective in the following ways.

(a) First, Williamson claims that Schumacher was ineffective in that he waived his right to be present at jury selection without first discussing such waiver. For the reasons outlined in Division 1 above, this enumeration is without merit. Further, even if the waiver fell below the standard of effective representation, such deficiency would not reasonably be likely to have produced a different outcome in the trial. See *Gross*, supra.

(b) Williamson claims that Schumacher failed to cross-examine a key witness for the State, the victim's cousin, to whom she first reported the molestation. Williamson also argues that Schumacher failed to adequately prepare for the cross-examination of the five-year-old victim. At the hearing on the motion for new trial, Schumacher testified that his decision not to cross-examine Ross was a tactical decision. With regard to the five-year-old victim, Schumacher testified that he had previously tried five child molestation cases and that in specific preparation for this case he read treatises regarding cross-examining a child victim. Although Schumacher testified that in hindsight his cross-examination would have been different, his performance in this manner was not deficient. See *Gross*, supra; *Jacobson v. State*, 201 Ga. App. 749 (5) (412 SE2d 859) (1991).

(c) Williamson argues that Schumacher failed to demand a reliability ruling for those witnesses who were called to testify about hearsay statements made by the victim and that this failure constituted ineffective assistance. This contention is without merit.

First, the transcript reveals that Williamson's contention is based on a somewhat inaccurate factual predicate in that the record reveals that Schumacher did demand a reliability ruling regarding the pediatrician's repetition of the victim's statement. Also, Schumacher filed a motion to invoke the procedures of *Sosebee v. State*, 257 Ga. 298 (357 SE2d 562) (1987), and when the motion was heard the State indicated that the victim would testify.

"Examination of the transcript of the . . . trial establishes a sufficient showing of indicia of reliability, within the meaning of OCGA § 24-3-16, as to all out-of-court statements made by the victim, which were testified to by witnesses in the presence of the jury." *Gregg v. State*, 201 Ga. App. 238, 241 (3) (b) (411 SE2d 65) (1991). Accordingly, we find no deficiency in this respect in defense counsel's performance. Moreover, even if the failure to request a reliability ruling on each of the statements fell below the standard of effective representation, such deficiency would not reasonably be likely to have produced a different outcome in the trial. See *Gross*, supra; see also *Gregg*, supra.

(d) Williamson argues that Schumacher failed to move for a directed verdict of acquittal as to Count 2 of the indictment and that he failed to move for a mistrial after the State argued in closing that Williamson had molested the victim on dates other than July 3. A review of the transcript reveals that there was evidence to support the State's claims that molestation had occurred on dates other than July 3. Schumacher testified at the motion for new trial that his decision not to move for a directed verdict of acquittal was a strategical decision based on the fact that there was evidence in the record to prevent the granting of such a motion. We do not find counsel's performance in this regard deficient.

(e) Williamson claims that Schumacher failed to prepare him for trial. At the hearing on the motion for new trial, Schumacher testified that he met with Williamson twice prior to trial and spoke with him several times on the telephone, as well as consulting with him during trial. Schumacher also stated that he consulted with Williamson's previous attorney. Contrary to Williamson's argument, we do not find counsel's performance in this regard deficient and Williamson's claims are without merit.

(f) Williamson argues that Schumacher failed to present an alibi defense. The defense was that Williamson was in jail for a traffic violation during the period from February 7, 1990 to May 22, 1990 and thus, he argues, was incapable of the acts charged in the indictment

which were based on his alleged actions between January 1, 1990 and July 4, 1990. Schumacher testified at the hearing that his decision not to present evidence on this point was a tactical one. We find no deficiency in Schumacher's failure to present evidence regarding this imperfect alibi defense and Williamson's claims in this regard are without merit.

Secondly, Williamson claims that Schumacher failed to present evidence that the victim was "fooling around" with other children. Again, we find no deficiency in counsel's failure to present this defense and Williamson's claims in this regard are without merit.

(g) Williamson claims that counsel's failure to request a mistrial after a social worker gave an opinion regarding the child abuse accommodation syndrome constituted ineffective assistance. The testimony was elicited in response to the State's question as to whether the victim displayed typical symptoms of child abuse accommodation syndrome. The social worker responded that "in my clinical judgment, what she said had occurred had occurred and she did display manifestations of that result, yes."

Assuming, arguendo, that the social worker's statement was unambiguous and thus was testimony regarding the child's credibility and the ultimate issue in the case, we recognize that the witness' statement was offensive to the ruling of *Allison v. State*, 256 Ga. 851 (353 SE2d 805) (1987); *Smith v. State*, 259 Ga. 135 (2) (377 SE2d 158) (1989); and *State v. Oliver*, 188 Ga. App. 47 (372 SE2d 256) (1988). Nonetheless, "it cannot be said to raise a reasonable probability that but for such error, the verdict would have been different. [Cits.] This is particularly so in view of the fact that the record shows the child's statements were reasonably consistent, thus supporting the verdict found by the jury with or without this social worker's opinion." *Stamey v. State*, 194 Ga. App. 305, 306 (1) (a) (390 SE2d 409) (1990). Although, in this case, unlike in *Stamey*, the social worker did not exhaustively describe the criteria for determining the victim's credibility, her statement was not a significant addition to her main testimony. Moreover, she was cross-examined thoroughly on the subject of child abuse accommodation syndrome and she recanted on her earlier testimony by stating: "What I'm aware of is that if I am not present, I cannot swear that anything did or did not take place. What I have to deal with are the symptoms that are presented to me as a result of what's been reported. . . ." Accordingly, we conclude that defense counsel's performance in this matter was not so deficient that there can be shown with a reasonable probability that the results of the proceedings would have been different had he performed otherwise.

3. Finally, Williamson contends that there was insufficient evidence to support his convictions for child molestation and aggravated

child molestation and that the trial court erred in refusing his motion for a new trial. We find that the evidence was sufficient to support the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Carley, P. J., Johnson and Blackburn, JJ., concur. Beasley and Cooper, JJ., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent because the record does not show that defendant waived his right to be present at the individual voir dire of the prospective jurors and the selection of the jurors who were to determine his guilt or innocence.

The right to be present "at all stages of the trial . . . is an important right of the defendant, guaranteed by our [Georgia] Constitution . . . ." *Wilson v. State*, 212 Ga. 73, 77 (90 SE2d 557) (1955). According to *Wilson*, supra at 74, it is derived from the portion of the Bill of Rights which then provided: "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both." Ga. Const. of 1945, Art. I, Sec. I, Par. IV. A brief history of that provision may be found in *Bloomfield v. Liggett & Myers*, 230 Ga. 484 (198 SE2d 144) (1973). This court recognized the right to be present as being derived from the same part of the 1976 Constitution, in *Palmer v. State*, 155 Ga. App. 368 (271 SE2d 24) (1980).

The provision was revised in 1983: "No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Ga. Const. of 1983, Art. I, Sec. I, Par. XII. The revision did not change defendant's right to be present which, as acknowledged by the Supreme Court in *Wilson*, is a principle which has been recognized since the establishment of that court. As quoted there: " 'The accused and his counsel have the right to be present at every stage of the proceedings and personally see and know what is being done in the case. To say that no injury results when it appears that what occurred in their absence was regular and legal would, in effect, practically do away with this great and important right, one element of which is to see to it that what does take place is in accord with law and good practice.' [Cits.]" Id. at 74-75. As written by Chief Justice Bleckley regarding the right to be present at all stages of the proceeding in a murder case, including when a jury charge is given: "The presence of the counsel was no substitute for that of the man on trial." *Wilson v. State*, 87 Ga. 583, 584 (13 SE 566) (1891).

The right to be present has been acknowledged and protected. See, e.g., *Tiller v. State*, 96 Ga. 430 (1) (23 SE 825) (1895) (during

argument of counsel to jury); *Seay v. State*, 111 Ga. App. 22 (3) (140 SE2d 283) (1965) (during colloquy between jury and judge); *Palmer v. State*, supra (during jury view); *Martin v. State*, 160 Ga. App. 275, 278 (2) (287 SE2d 244) (1981) (during jury view of evidence); *Collins v. State*, 191 Ga. App. 289 (2) (381 SE2d 430) (1989) (during recharge to jury). Compare *Jones v. State*, 259 Ga. 603 (2) (385 SE2d 400) (1989) (absence of defendant not shown); *Stone v. State*, 177 Ga. App. 750 (1) (341 SE2d 280) (1986) (brief colloquy before jury selection).

The right extends to jury selection, "when a defendant may challenge prospective jurors 'simply on the basis of the sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another.' (Punctuation and citation omitted.) [Cit.]" *Fictum v. State*, 188 Ga. App. 348, 350 (373 SE2d 54) (1988).[1]

The 1955 *Wilson* case held that, with respect to the right to be present, counsel could waive it for defendant but "in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him." *Wilson*, supra at 77-78. Earlier this court had held that the defendant's right to be present at every stage from arraignment to verdict "can not be waived by the attorney, except by the express authority of the defendant." *Lyons v. State*, 7 Ga. App. 50 (2) (66 SE 149) (1909). This principle was repeated in *Palmer*, supra. According to *Palmer*, the court may not deprive defendant of the right "in the absence of a personal waiver by him."

"[T]he standard for waiver requires an intentional relinquishment or abandonment of a known right or privilege" under our Constitution as well as under the federal constitution. *Butler v. State*, 198 Ga. App. 217, 220 (1) (401 SE2d 43) (1990) (physical precedent only but cited in *Kirkland v. State*, 202 Ga. App. 356, 357-358 (1) (414 SE2d 502) (1991), in connection with waiver of counsel. The standard was first articulated in *Johnson v. Zerbst*, 304 U. S. 458, 464 (58 SC 1019, 82 LE 1461) (1938)). This standard has been applied to the right to be present as it is guaranteed by the Constitution of this State. *Martin v. State*, supra. The court held that defendant had a right to be present at a jury viewing of evidence.

In *Harwell v. England*, 234 Ga. 640 (217 SE2d 154) (1975), the

---

[1] Of course, racial discrimination is precluded. *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The United States Supreme Court, in reversing a conviction because of defendant's absence during jury challenges, stated: "The prisoner is entitled to an impartial jury composed of persons not disqualified by statute, and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors. The necessities of the defence may not be met by the presence of his counsel only." *Hopt v. Utah*, 110 U. S. 574, 578 (4 SC 202, 28 LE 262) (1884).

Court ruled that under Georgia law, a waiver of the right to be present, when made by counsel in defendant's presence, does not require that defendant know or have been specifically warned of the right being waived. That case dealt with defendant's absence during a jury's view of the site of a crime where agreed-upon aspects of the site were pointed out. Moreover, the court also found a subsequent acquiescence in the waiver.

In this case, on the other hand, the waiver involves the defendant's right to be present at the crucial time when jurors are being examined for their possible prejudice and selected to decide the defendant's guilt or innocence. Understanding the significance of his presence and personal participation at this proceeding, which is uniquely and peculiarly a trial experience, cannot be presumed to exist in the mind of the lay person. In determining what must be shown to constitute a valid waiver of presence, the questions which must be asked are, "at what?" and "what is the significance of presence?" at the particular event. Where presence would be, at the mere viewing of a site, as in *Harwell*, or where the meaning of absence would have little or no significance, as also was the situation in *Harwell*, then the waiver can more easily be acknowledged as valid. But where the event is one at which the defendant's presence is critical, and the lay person cannot be expected to understand the significance or what part he or she would play in the event, then the waiver must be scrutinized more carefully.

Here we are concerned about the defendant's presence at voir dire and selection, a process which would be unfamiliar to a lay person, but critically important to the fairness of his trial, and the standard as articulated in *Johnson v. Zerbst* should be observed.

The record on the motion for new trial shows that before trial, the district attorney and counsel discussed the motion for individual voir dire and agreed to the procedure for accommodating it. Defendant was not part of this discussion but was in the courtroom. The district attorney and counsel then left the courtroom and discussed it with the judge either in the hallway before she came into the courtroom or in her chambers. After the panel of jurors was sworn and qualified, the court announced that individual voir dire and jury selection would be conducted in the jury room.

Then defendant's counsel stated: "For the record, the accused — his counsel waives his presence at the voir dire of the jurors." The court asked: "And specifically requests that he not be present, is that correct?" Counsel responded "yes," whereupon the voir dire and selection process proceeded in the jury room, in the defendant's absence. When it was completed, the proceedings continued in open court, in defendant's presence. Nothing was said at that time with respect to defendant's absence.

Neither the record of the trial nor that of the motion for new trial shows that defendant knew he had a constitutional right to be present and intentionally relinquished it. He testified at the motion hearing that he did not know he had such a right, so he did not question counsel about it when counsel decided to question prospective jurors and choose the jury without him. For the same reason, and because he was very nervous, he did not say anything to the court.

Counsel, who believed that defendant was innocent and at the motion hearing still had doubts of his guilt and thought that defendant was "very candid" with him, made the decision himself to preclude defendant, as a trial tactic to encourage candor from the jurors on sensitive personal questions and because defendant was dressed "like he was going to a nightclub," in a black silk shirt and maybe a gold jacket and pants. He was certain he discussed defendant's absence with him but could not recall it specifically; he said he usually asks the court to expressly record a personal waiver of defendant on the record, but that was not done here. The most he could say was that "I would say that I had — did tell Mr. Williamson that he had a right to be there," and that "probably" defendant's response was that he would do what counsel thought best. He explained: "I say probably because I'm applying a probability theory to this." There is no evidence that defendant was aware of what his absence from the selection process meant and no clear evidence that he knew of his right to be present unless he chose, on counsel's advice, to be absent.

Defendant's waiver, exercised by counsel in this case, was not shown to meet the standard. We cannot presume that, because defendant was present in court when counsel spoke the words, he knew of his right. Nor is it shown that he thereafter learned of his right and acquiesced in the process by which the jury had been questioned and selected.

This case is unlike *Allen v. State*, 199 Ga. App. 365, 367 (6) (405 SE2d 94) (1991). There the record showed that trial counsel informed defendant of his right to be present at jury selection and, after it was done in his absence, defendant and counsel met to discuss the impaneled jury and no complaint was made.

It also differs from *State v. Phillips*, 247 Ga. 246, 247 (1) (275 SE2d 323) (1981), in which defendant left the courtroom during examination of a witness, apparently as a deliberate tactical decision made by counsel. He was present again when the judge and district attorney recounted the events leading to his withdrawal. The Court held that the evidence showed that defendant acquiesced in counsel's express waiver and that it was "both 'knowing' and 'voluntary.' " Id. at 249-250.

Appellant is entitled to a new trial at which, if he does waive his presence at any stage, the waiver is shown to be a valid one.

I do not reach the issues decided in Division 2 of the majority opinion but I concur in Division 3.

I am authorized to state that Judge Cooper joins in this dissent.

DECIDED MARCH 2, 1993.

*Carla J. Friend*, for appellant.

*Lewis R. Slaton, District Attorney, Alfred D. Dixon, Rebecca A. Keel, Assistant District Attorneys*, for appellee.